WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lawrence H Hobbs,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>M3 Engineering & Technology Corporation, et al.,<br><br>　　　　　Defendants. | No. CV-22-00540-TUC-JCH<br><br>*Consolidated with:*<br><br>No. CV-22-00290-TUC-JCH<br><br>**ORDER** |

In this case, pro se Plaintiff primarily seeks to allege that Defendants wrongfully denied him employment at M3, extending a conspiracy to blacklist him begun by several federal agencies, two police departments, and their employees. Doc. 46. Briefing on Defendants' motion to dismiss is complete, Docs. 43, 47, 50, and Plaintiff's request for oral argument is denied because it would not aid the Court's decision. Fed. R. Civ. P. 78(b). The Court will dismiss with prejudice under Rules 8, 9, 12, and 41 because Plaintiff's latest complaint again fails to comply with the Court's previous orders and the local and Federal Rules of Civil Procedure, and fails to state a claim.

**I.　Background**

　**A. Plaintiff asks the Court to notice his litigation history.**

In a section titled "Exhibit 1 … Materials in the Record," Plaintiff states that he has filed "numerous [Equal Employment Opportunity Commission ("EEOC")]/Whistleblowing complaints … which … has now led to Federal litigation … [and] [s]aid records are also subject to judicial notice and are incorporated herein all things[.]" Doc. 46

at 52–53. In the next section, titled "[EEOC] Materials in the Record," Plaintiff states that the "complete prior procedural history of discrimination in this cause is long and complicated and has been fully presented in public records subject to Judicial Notice[.]" *Id.* at 53. In the next section, titled "[EEOC] Litigation Incorporation by Reference," Plaintiff provides his litigation history and seeks to "incorporate herein by reference, herein all things, as if fully stated herein, all allegations of prior discrimination and retaliation as alleged and amended pursuant to various civil litigation complaints, as publicly filed documents … available to this Court." *Id.* at 54. In the next section, titled "False Criminal Accusation Materials in the Record," Plaintiff refers to a state criminal case brought against him in Texas, "incorporated herein all things, as if stated herein all things, … subject to judicial notice." *Id.* Plaintiff refers vaguely to these cases throughout his amended complaint, urging the Court to notice them as evidence of Defendants' "predecessors'" conspiracy to harass and discriminate against him. *See, e.g.*, *id.* at 8–10.

The Court construes Plaintiff's statements as a motion for judicial notice. The Court may judicially notice facts "not subject to reasonable dispute," Fed. R. Evid. 201, without converting a motion to dismiss into a motion for summary judgment, as well as documents incorporated by reference in the complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Facts are "not subject to reasonable dispute" if they are "generally known," Fed. R. Evid. 201(b)(1)–(2), such as "matters of public record." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted). Documents are incorporated by reference if the complaint refers to them "extensively." *Id.* at 1002. Plaintiff's cases are referred to throughout his amended complaint, and they are public records. Thus, the Court will grant Plaintiff's motion for judicial notice in part, consistent with its reasoning and citations throughout this Order.

### B. Plaintiff's history provides inessential but helpful context.

The Court notices Plaintiff's litigation history only to provide helpful orienting context. That context is not given by Plaintiff except through gestures. He assumes the Court and the parties are familiar with all of it. However, as much as Plaintiff's history

provides some helpful clarity, this case will be decided on its own merits. Here, Plaintiff seeks to allege a sweeping conspiracy. The fact that he has tried similarly in other cases is not relevant to the merits of this case. Still, the Court notes in places where Plaintiff has received similar feedback for amendment. That reinforces—but does not inform—the Court's decision to dismiss with prejudice.

>    i.   **Plaintiff's previous complaints clarify the circumstances surrounding his frequent reference to Defendants' "predecessors."**

Drawing primarily from Plaintiff's previous complaints, the Court pieces together the following history leading up to Plaintiff's claims in this case. The Court will use a short cite form here for convenience; full citations are in the next section.

From 2017 to 2018, Plaintiff worked at the Bureau of Land Management ("BLM") within the Department of the Interior ("DOI") in Wisconsin. *Haaland (2)*, Doc. 1 at 7–12. In February 2018, Plaintiff was falsely accused of sexual harassment. *Id.* at 9. In early November 2018, Plaintiff was arrested and cited for disorderly conduct in Mt. Pleasant, Wisconsin, in connection with "undertaking defensive action for the purpose of preventing the unauthorized entry … by certain trespassers, with a prior history of domestic disturbance against the Plaintiff[.]" *See Willis*, Doc. 18 at 4–8. In late November 2018, after filing several EEOC complaints related to his false accusations of sexual harassment, "Plaintiff executed a 'constructive discharge'" from BLM and an "employment agreement/contract, to execute transfer" to a United States Air Force ("USAF") location in Del Rio, Texas. *Haaland (2)*, Doc. 1 at 11–12.

In mid-2019, the USAF fired Plaintiff for "lack of candor" regarding his 2018 Wisconsin charge for disorderly conduct. *See Kendall*, Doc. 21 at 25–26. Plaintiff "misread, and/or misunderstood the fine print on a [USAF] form [OF-306]," and so "unintentionally incorrectly mislabeled his OF-306" by omitting "Plaintiff's criminal record, which occurred after his onboarding, and required prior to allowing Plaintiff's computer access, between November and February 2019, which returned the results of the 'Disorderly Conduct Charge.'" *See id.* at 26.

In late 2020 and early 2021, Plaintiff was arrested, incarcerated, and released on

bond in Del Rio, Texas, in connection with a 4-count indictment for unauthorized use of a BLM credit card when transferring from employment at the BLM to the USAF. *See Texas*, 2020-0254-CR Indictment at 1–2; Sheriff's Return at 1; Cash Bonds 1–4. Plaintiff moved to quash the indictment based on evidence that he was under a Department of Defense ("DOD") "Permanent Change of Station" travel order. *See* State's Response to Defendant's Motion to Quash at 3 (referring to an unavailable attachment to Plaintiff's motion). The District Attorney conceded that Plaintiff's actions were not a felony because they were under an "official travel order," while protesting that Plaintiff's actions were nonetheless "a violation of DOI policy, a violation of the Federal Travel Regulations, [and] a violation of [Plaintiff's] [Government Travel Charge Card] agreements." *Id.* Given the State's concession, the court quashed the indictment and dismissed the case in November 2021. *See* Motion to Dismiss Order at 1. Plaintiff's many pro se cases followed, starting in April 2022.

### ii. Last year Plaintiff filed at least 13 pro se lawsuits against Defendants and their "predecessors."

On April 1, 2022, Plaintiff filed suit in the Del Rio Division of the Western District of Texas. *Hobbs v. Stevens, et al.*, 2:22-CV-00016-AM (April 2022). In a 34-page complaint, Plaintiff alleged that Defendant Stevens, a BLM agent, in conspiracy with multiple unnamed Defendants, violated multiple federal laws and Plaintiff's constitutional rights in connection with Plaintiff's criminal indictment and USAF termination. *See, e.g.*, *Stevens*, Doc. 2 at 6, 26. The court ultimately granted Stevens' motion to transfer venue to the San Antonio Division. *See Stevens*, Doc. 16.

On April 7, 2022, Plaintiff filed a different suit in the San Antonio Division of the Western District of Texas. *Hobbs v. Stanley et al.*, 5:22-CV-00342-XR (April 2022). In a 55-page amended complaint, Plaintiff alleges that Defendant Stanley, a DOI agent, in conspiracy with multiple unnamed Defendants, violated multiple federal laws and Plaintiff's constitutional rights in connection with Plaintiff's criminal indictment and USAF termination. *See Stanley*, Doc. 10 at 3, 21. Briefing on Defendants' motion to dismiss in *Stanley* is ongoing. *See Stanley*, Docs. 21, 22.

On April 14, 2022, Plaintiff filed suit in the Northern District of Illinois. *Hobbs v. Bauch et al.*, 1:22-CV-01924 (April 2022). In a 38-page complaint, Plaintiff alleged that Defendant Bauch, an Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge, and Defendant Vaith, a U.S. military attorney, in conspiracy with multiple unnamed Defendants, discriminated against Plaintiff in violation of his constitutional rights in Plaintiff's proceedings before the EEOC. *See Bauch*, Doc. 1 at 7, 17. The court ultimately dismissed this case for failure to pay the filing fee. *Bauch*, Doc. 13.

On April 15, 2022, Plaintiff filed suit in the Eastern District of Wisconsin. *Hobbs v. Willis et al.*, 2:22-CV-00467-PP (April 2022). In a 28-page amended complaint, Plaintiff alleges that Defendant Willis, a Mount Pleasant Police Department Officer, together with four other officers, the Mount Pleasant Police Department, and the Village of Mt. Pleasant, conspired to interfere with Plaintiff's civil rights in connection with an arrest for disorderly conduct in 2018. *Willis*, Doc. 18 at 3–8. Briefing on Defendants' motion to dismiss in *Willis* is complete but a decision has not been rendered. *See Willis*, Docs. 19, 30, 32.

On April 18, 2022, Plaintiff filed suit in the District of Colombia. *Hobbs v. Cobb et al.*, 1:22-CV-01076 (April 2022). In a 6-page complaint, Plaintiff alleged that Defendant Cobb, an EEOC Administrative Law Judge, together with multiple unnamed Defendants, conspired to discriminate against Plaintiff in violation of his constitutional rights in Plaintiff's proceedings before the EEOC. *See Cobb*, Doc. 1-2 at 1–3. The court ultimately dismissed without prejudice because "plaintiff's claims against the ALJ would have arisen in the course of administrative proceedings on plaintiff's employment discrimination claim, and defendant is protected by absolute immunity." *Cobb*, Doc. 5 at 1 (citations omitted). Plaintiff did not amend his complaint.

On April 22, 2022, Plaintiff filed suit again in the Eastern District of Wisconsin. *Hobbs v. Shesky et al.*, 2:22-CV-00492-PP (April 2022). In a 71-page complaint, Plaintiff alleged that Defendant Shesky, a Kenosha Police Department ("KPD") Officer, together with two other KPD officials, the KPD itself, the City of Kenosha, and unnamed Defendants, conspired to interfere with Plaintiff's civil rights in connection with two

allegations of sexual harassment made against Plaintiff when he worked at the BLM. *Shesky*, Doc. 1 at 1, 4–18. The court ultimately dismissed without prejudice for failure to properly serve Defendants, providing detailed suggestions how to improve Plaintiff's complaint. *See Cobb*, Doc. 14 at 16–20. In particular, the court noted:

> The complaint form the plaintiff used advised him to write a "short and plain statement of the claim." Dkt. No. 1 at 4. It instructed him not to make legal arguments and to state as briefly as possible the facts showing that he was entitled to relief and the facts about what each defendant did to violate his rights. *Id.* The plaintiff ignored these instructions. If he files another lawsuit, he might consider following them.

*Id.* at 17. Plaintiff did not amend his complaint.

On April 27, 2022, Plaintiff filed suit in the Milwaukee County Circuit Court of eastern Wisconsin. *Hobbs v. Shesky et al.*, 22-CV-2727 (April 2022). Defendants removed to the Eastern District of Wisconsin. *Hobbs v. Shesky et al.* ("*Shesky (2)*"), 2:22-CV-00680-PP (June 2022). In a 174-page complaint, Plaintiff alleges Defendant Shesky, the KPD Officer, together with Shesky's now-former wife, fifteen other federal employees, and unnamed Defendants, conspired to violate Plaintiff's civil rights in connection with Plaintiff's whistleblowing activity and allegations of sexual harassment against Plaintiff when he worked at BLM. *See Shesky (2)*, Doc. 1-1 at 1, 68–77, Doc. 59 at 1. Briefing on Defendants' motions to dismiss *Shesky (2)* is complete but a decision has not been rendered. *See Shesky (2)*, Docs. 36, 37, 49, 51, 52.

On May 27, 2022, Plaintiff filed suit again in the Del Rio Division of the Western District of Texas. *Hobbs v. United States of America et al.*, 2:22-CV-00026-AM (May 2022). In an 8-page complaint, Plaintiff alleged that Defendant United States of America, together with Secretary of the Interior Haaland, violated Title VII, the ADEA, Texas state law, and Plaintiff's constitutional rights in connection with Plaintiff's USAF employment and termination. *See USA*, Doc. 2–5. The court ultimately granted Defendants' motion to transfer venue to the San Antonio Division. *See USA*, Doc. 19.

On June 6, 2022, Plaintiff filed suit in the Eastern District of Missouri. *Hobbs v. Doe Run Corporation et al.*, 4:22-CV-00612-RWS (June 2022). In a 56-page complaint,

Plaintiff alleges BLM Secretary Haaland, two BLM officials, and numerous unnamed BLM employees, together with Defendant Doe Run Corporation, conspired to violate Plaintiff's rights in connection with his employment at BLM and in connection with whistleblowing activity in 2018. *See Doe Run*, Doc. 1 at 5–10.  Briefing on Defendants' motions to dismiss *Doe Run* is complete but a decision has not been rendered. *See Doe Run*, Docs. 10, 25, 26, 27, 29, 39.

On June 21, 2022, Plaintiff filed suit again in the Eastern District of Wisconsin. *Hobbs v. Haaland et al.* ("*Haaland (2)*"), 2:22-CV-00721-PP (June 2022). In a 48-page complaint, Plaintiff alleges that Defendant Secretary of the Interior Haaland, together with the United States of America and the BLM, violated multiple federal laws and Plaintiff's constitutional rights in connection with Plaintiff's BLM employment and termination. *Haaland (2)*, Doc. 1 at 1–9. Briefing on Defendants' motion to dismiss *Haaland (2)* is ongoing. *See Haaland (2)*, Docs. 14, 19. Most recently, the court ordered Plaintiff either to amend his 58-page motion-to-dismiss response to comply with the 30-page limit, or to notify the court that it may rely only on the first 30 pages. *Haaland (2)*, Doc. 24.

On June 29, 2022, Plaintiff filed suit in the District of Arizona. *Hobbs v. Oppenheimer et al.*, 4:22-CV-00290 (Ariz. D. Ct. June 29, 2022). In a 12-page complaint, Plaintiff alleged that Defendant Oppenheimer and his wife, together with unnamed Defendants, conspired to defame Plaintiff and to sabotage Plaintiff's application to M3 by telling M3 hiring employees about Plaintiff's "prior criminal activity, based on his prior [EEOC] activity, which led to the revoking of his driver's license." *See Oppenheimer*, Doc. 1 at 1–6. The Court ultimately consolidated *Oppenheimer* with this case, Plaintiff's second filed in the District of Arizona, discussed below. *See Oppenheimer*, Doc. 27.

On July 12, 2022, Plaintiff filed suit again in the San Antonio Division of the Western District of Texas. *Hobbs v. Kendall*, 5:22-CV-00739-FB (July 2022). In a 65-page complaint, Plaintiff alleged that Defendant USAF Secretary Kendall—together with the U.S. Attorney's Office and the United States of America and in conspiracy with the BLM—violated multiple federal laws and Plaintiff's constitutional rights in connection with

Plaintiff's criminal indictment and USAF termination. *See Kendall*, Doc. 10 at 3, 10, 21. The court granted Defendants' motion to dismiss, finding "all claims … other than [Plaintiff's Title VII and ADEA claims against Defendant Kendall[] are wholly without merit," and noted that Plaintiff's Title VII and ADEA claims "fail[ed] to identify any factual basis" despite leave to file a 61-page response. *Kendall*, Doc. 20 at 2. The court gave Plaintiff leave to amend but advised the amended complaint "shall not exceed 20 pages and should focus on factual allegations, not legal arguments." *Id.* at 3. Plaintiff's subsequent First Amended Complaint exceeds the court's page limit by forty pages. *See Kendall*, Doc. 21. Briefing on Defendants' second motion to dismiss in *Kendall* is complete but a decision has not been rendered. *See Kendall*, Docs. 22, 23, 24.

On December 5, 2022, Plaintiff filed this case in the District of Arizona. *Hobbs v. M3 Engineering et al.*, 4:22-CV-540 (Ariz. D. Ct. Dec. 5, 2022). In a 92-page complaint, Plaintiff sought to hold liable Defendants M3, Oppenheimer and his wife, together with many unnamed Defendants, for 130 counts or claims stemming from Plaintiff's denial of employment by M3. *See generally* Doc. 1. The Court consolidated this case with *Oppenheimer*, Doc. 23, and dismissed without prejudice under Rules 8, 9, and 12 of the Federal Rules of Civil Procedure, noting that it would be "more inclined to dismiss with prejudice if Plaintiff's next amended complaint still is not substantially in compliance with the Court's orders and the local and federal rules." Doc. 40 at 7. The Court further required Plaintiff to seek leave to file any complaint over 21 pages. *Id.* Briefing on Plaintiff's subsequent 48-page amended complaint is now complete, Docs. 43, 46, 47, 50, and this Order is the Court's disposition of both this case and the consolidated *Oppenheimer* case.

    **iii.**     **Turning to Plaintiff's history in this case, the Court finds his latest amended complaint is a Second Consolidated Complaint.**

In June 2022, Plaintiff filed his first, 12-page complaint in 4:22-CV-00290. *Oppenheimer*, Doc. 1. Plaintiff alleged nine claims against Oppenheimer and his wife, as well as two unnamed John and Jane Doe defendants listed "c/o M3 Engineering & Technology Corporate Office." *Id.* at 12. The Court dismissed all defendants except Oppenheimer and most of Plaintiff's claims under Rule 12(b)(6). *Oppenheimer*, Doc. 14 at

16. The Court granted leave to amend to "provide additional facts—not legal authority or arguments[.]" *Id.*

In December 2022, Plaintiff filed an 88-page amended complaint. *Oppenheimer*, Doc. 16. He simultaneously filed a 92-page original complaint under Case Number 4:22-CV-540-TUC-RCC ("M3"). *M3*, Doc. 1. The amended *Oppenheimer* complaint and the original *M3* complaint were nearly identical except the *M3* complaint included M3 as a named defendant. *Compare, e.g.*, *Oppenheimer*, Doc. 16 at 4–5, 7, 19, 76–77, 80–81, 88, *with M3* Doc. 1 at 4, 5, 18, 76–77, 81–82, 91. The Court transferred *M3* to the undersigned, *M3* Doc. 22, and consolidated the cases into the higher number in the interest of judicial economy. *See M3* Doc. 23 at 5. Considering these developments, the Court referred to the *M3* complaint, Doc. 1, as the "Consolidated Complaint." *See id.* The Consolidated Complaint alleged roughly the same number of facts as the original 12-page complaint, but heavily diluted them with legal arguments, counts and claims, and recitations of elements. *See id.* at 3. As in the original complaint, Plaintiff alleged a conspiracy between M3, Oppenheimer and his wife, and multiple unnamed Defendants, to prevent Plaintiff's employment at M3 both in retaliation for Plaintiff's whistleblowing activity and due to Plaintiff's age, sex, or race. *Id.* at 1.

In May 2023, the Court dismissed the Consolidated Complaint without prejudice. *See* Doc. 40 at 7. The Court noted that Plaintiff had ignored the Court's instructions to "add facts, not legal arguments and conclusions," instead adding "76 pages of legalese, recitations of elements, and endless counts within counts." *Id.* at 6. The Court encouraged Plaintiff to become familiar with the local and Federal Rules of Civil procedure and referred Plaintiff to resources for pro se litigants. *Id.* The Court compared and contrasted Plaintiff's original complaint in Case 290 with the Consolidated Complaint, highlighting the ways in which it violated the Federal Rules. *Id.* at 3–6. The Court emphasized that the Consolidated Complaint suffered from two major flaws: the failure to allege facts rather than legal conclusions, and the failure to resolve significant tensions in the few facts alleged. *See id.* at 3–5. The Court closed by warning "failure to comply with the Court's

orders or the local or federal rules will result in dismissal with prejudice." *Id.* at 7.

Before the Court is Plaintiff's "1st Amended Complaint Asserting a Conspiracy to Commit Violations of Civil and Equal Employment Rights and Tortious Interference." Doc. 46. Considering the history of Plaintiff's cases before the undersigned, the Court will refer to Plaintiff's amended complaint as the "Second Consolidated Complaint," or "SCC," and Plaintiff's first complaint in this case as the "First Consolidated Complaint" or "FCC."

**C. The SCC alleges primarily that Defendants conspired to deprive Plaintiff of employment, extending their "predecessors'" conspiracy to do the same.**

The SCC is fundamentally similar to the FCC. *Compare, e.g.*, FCC at 14–19 (background), 19–92 (counts and claims), *with* SCC at 8–15 (background), 15–54 (counts and claims). One difference is that the SCC uses a smaller font size than the FCC. *Compare, e.g.*, FCC at 1, *with* SCC at 1. Another difference is that the spacing between lines has been reduced in the SCC. *Compare, e.g.*, FCC at 1, *with* SCC at 1.

Viewed together with the original *Oppenheimer* complaint and the FCC, the SCC presents a now-familiar set of facts relating to Plaintiff's denial of employment at M3. *Compare* Doc. 1 at 14–19, *with* SCC at 9–15, *with* Doc. 40 at 3 (comparing these allegations to the first *Oppenheimer* complaint).[1] Plaintiff alleges that he is a federal employee. *See, e.g.*, SCC at 9; *see also id.* at 7 (also referring to Plaintiff as a "current and/or Federal employee"), 8 ("current or former Federal employee"). Plaintiff further alleges that Defendants extended a conspiracy of "perpetual discrimination," *id.* at 7, primarily due to Plaintiff's "age, his race, his sex, and/or as retaliation for his prior engagement in protected activity[.]" *See* SCC at 9. This conspiracy was between M3 and several of its employees, as well as Oppenheimer and his wife, but was also an extension of the conspiracy or conspiracies between at least the United States of America and several

---

[1] "The fact that the [Second] Consolidated Complaint is opaque unless read together with the [First Consolidated Complaint and original *Oppenheimer* complaint] further supports dismissal. An amended complaint completely supersedes its predecessor. Defendants are not obligated to perform a careful comparison of the old and new to determine the charges they face. The claims and the grounds for them must be apparent from the amended complaint itself." Doc. 40 at 3 n. 1.

of its employees, the BLM and several of its employees, the USAF and several of its employees, the DOD and several of its employees, the EEOC and several of its employees, and two police departments and several of their employees. *See, e.g.*, SCC at 2, 8 ("[T]he collective Defendants are not only responsible for their own collective conspiratorial misconduct, but also those of their predecessors."); *see also id.* at 53.

The circumstances of Defendants' conspiracy are difficult to discern without looking outside the SCC. Guided by Plaintiff's previous complaints, the Court again finds the following basic narrative. In February 2022, M3 and its agent Oppenheimer made Plaintiff "a legitimate offer of employment," SCC at 4, and Plaintiff "verbally accepted said offer." *Id.* at 10. A contract formed. *See id.* at 12. In May, Plaintiff "formally applied" for a position at M3. *Id.* at 10. At some point after May, *id.* at 11, and in conspiracy with others, Oppenheimer and his wife sabotaged Plaintiff's application or rescinded Plaintiff's offer, "falsely asserting Plaintiff lost his Driver's License for a DUI and physically assaulted fellow employees at his prior place of employment." *Id.* at 8.[2] Oppenheimer also, as the "central focal point of the conspiracy to defraud Plaintiff,"

> aggressively confronted the Plaintiff about the incidents leading to his termination from federal employment, i.e. Defendants previous engagement in protected activity, as specifically applicable to clients of M3, as undesirable from M3's perspective, and informed the [Plaintiff], the offer of employment would not be honored, additionally in part due to a desire to hire "younger, female candidates[.]"

*Id.* at 9.

Defendants' "actions," including their decision to rescind his offer of employment, interfered with (1) "the ["Promissory Estoppel"] employment contract [and the "Covenant

---

[2] The Court will use "Oppenheimer" to refer to William Oppenheimer because the SCC does not allege any facts unique to Oppenheimer's wife, Barbara. *See also Oppenheimer*, Doc. 14 at 5–6 (discussing an identical failure in the original complaint and providing the language Plaintiff would need if he had intended to include Barbara to ensure a judgment could include marital property); SCC at 51–52 (failing to include this language or allege more than legal conclusions supporting Barbara's individual liability). *Compare also* SCC at 5 (referring to Barbara as an employee of M3), *with* SCC at 51 (referring to Barbara as a healthcare professional who does not work for M3).

of Good faith and Fair dealing"] employment contracts … between Defendants and the [Plaintiff]," (2) "Plaintiff's contractual obligations to mediate his employment disputes with the EEOC," (3) "Plaintiff's contractual obligations to obtain employment while his employment dispute with the [USAF] was being mediated by the EEOC," (4) "Plaintiff's contractual obligations to obtain employment while his employment dispute with the [BLM] as also being mediated by the [EEOC]," (4) "Plaintiff's employment contractual relationship as established with the Monterey County Water Resources Agency (MCWRA)," (5) "Plaintiff's employment contractual relationship as established with the … International Boundary Waters Commission (IWBC)," (6) "Plaintiff's employment contractual relationship as established with the company known as ASRC Federal Netcentric Technology LLC (ASRC)," (7) "Plaintiff's employment contractual relationship as established with the mining company known as Freeport-McMoRan," (8) "all of Plaintiff's future employment contractual relationships and expectancies," and (9) "Plaintiff's attempts to refinance his personal property." *Id.* at 12–13.

Plaintiff seeks damages of $3.5 million, the total of a 10-year estimate of his expected salary and benefits at M3 and "pecuniary and non-pecuniary damages applicable to Plaintiff's other employment related contractual interference claims." *Id.* at 13.

## II.  Legal Standards

**Rules 8 & 12.** To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although the complaint "does not need detailed factual allegations, … a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To comply with Rule 8, "a complaint must give fair notice and state the elements of the claim plainly and succinctly." *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A complaint that is "needlessly long, or … highly repetitious, or confused, or consisting of incomprehensible rambling" violates Rule 8. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (citation omitted). Rule 8 is a

frequent barrier encountered by pro se litigants who file inordinately long complaints. *Orea v. Quality Loan Serv., Corp.*, 2019 WL 8884117, at *4 (C.D. Cal. Nov. 26, 2019) (collecting cases), *aff'd*, 859 F. App'x 799 (9th Cir. 2021).

**Rule 15.** Leave to amend "shall be given freely when justice so requires." Fed. R. Civ. P. 15(a). This policy is applied with "extreme liberality." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). But leave to amend may be denied if a party repeatedly fails to cure deficiencies identified by the Court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see generally* Doc. 40 at 2 (providing the preceding rule statements).

**Rule 41.** The Court may dismiss an action or claims "[i]f the plaintiff fails … to comply with [the Federal Rules] or a court order[.]" Fed. R. Civ. P. 41(b).

**III. Analysis**

The Court will dismiss Plaintiff's SCC with prejudice because it fails to comply with the Court's previous orders and the local and Federal Rules of Civil Procedure, and because it fails to state a claim.

**A. The SCC violates the Court's orders and guidance for amendment.**

The SCC ignores the Court's direction in general and specific ways. At the most general level, the Court has told Plaintiff repeatedly that his complaints have too few facts and too many legal conclusions and arguments. *See* Doc. 40 at 4 ("Alleging primarily legal conclusions could end [Plaintiff's] case before it starts."); *see also Oppenheimer*, Doc. 14 at 16 (granting leave to amend to "provide additional facts—not legal authority or arguments"). The SCC alleges no more facts than the FCC—it may even allege fewer. The volume of legal conclusions and argument is undiminished. The Court has also repeatedly observed that Plaintiff's facts are in significant tension with each other. For example, if Oppenheimer formed a contract with Plaintiff in February, why did Plaintiff "formally apply" in May? *See* Doc. 40 at 5 (discussing this tension and explaining again that "inconsistent facts … reduce their plausibility") (citing *Oppenheimer*, Doc. 14 at 8) (same). Were the Defendant M3 conspirators motivated to retaliate against Plaintiff for his whistleblowing, his role regulating the mining industry, and/or his age/sex/race, or was it

instead that Oppenheimer and his wife sabotaged Plaintiff's application by falsely accusing him of getting a DUI? The SCC does not respond to these observations beyond repeating the same conflicted facts and, at one point, arguing the "proportional attribution to each discriminatory element may not be possible to determine, but in totality, led to the unlawful decisions … in deliberately failing to hire the Plaintiff based on either a single, or an aggregate of discriminatory motives." SCC at 12. The SCC also eludes the spirit of the Court's order to seek amendment for any complaint longer than 21 pages. *See* Doc. 40 at 7. Plaintiff failed to get anywhere close to 21 pages even while reducing the font size and line spacing. Never mind that in doing so Plaintiff violated the Court's order to comply with the local rules. *See id.* at 8; LRCiv. 7.1(b) (requiring double spacing and 13-point font). That error is less concerning than the fact that Plaintiff appears not to have considered the Court's feedback at all.

More specifically, the SCC repeats deficient aspects of the FCC as though the Court never explained their deficiency. For example, the Court previously noted that Plaintiff failed to refer to any facts to support his claim to be a federal officer. Doc. 40 at 3. The SCC repeats those claims without adding anything to substantiate them, chronically using the phrase "current or former Federal employee" as though that avoids the issue.[3] Similarly, the Court previously noted that Plaintiff failed to allege facts to support his claim that "Defendants retaliated against Plaintiff as a way to achieve 'social justice' for the misconduct of others … based on the tidal wave of current events." Doc. 40 at 4–5. The SCC repeats that phrase verbatim without adding anything new to explain it. SCC at 21. And the Court previously noted that Plaintiff alleged no facts to support his claims for interference with the EEOC, BLM, USAF, MCWRA, IWBC, ASRC Federal Netcentric Technology, Freeport-McMoRan, and Plaintiff's efforts to refinance his personal property. Doc. 40 at 4. The SCC refers to each of those agencies again, and again fails to allege

---

[3] Plaintiff also fails to allege any facts that could support his implied argument that the conspiracy and discrimination he faced from Defendants' "predecessors," when he appears to have been a federal employee, somehow supports a claim that Defendants also conspired and discriminated against him in his federal capacity after he left his federal role.

- 14 -

associated facts.

Finally, the SCC largely fails to incorporate the Court's feedback about the prodigious number of counts and claims alleged. The *Oppenheimer* complaint contained 9 counts or claims, and the FCC contained more than 130. *Oppenheimer*, Doc. 1 at 6–8; FCC at 18–91. The Court analyzed each claim from the *Oppenheimer* complaint, *Oppenheimer* Doc. 14 at 6–15, but declined to do so with the FCC. *See* Doc. 40 at 4–5. Instead, the Court identified the central failing of the FCC's claims as being "mostly unconnected to any facts whatsoever." *Id.* at 4. The SCC includes fourteen counts of "Conspiracy to Deprive," SCC at 15–18, four counts of "Defamation Per Se," SCC at 18–22, six counts of "Conspiratorial Misconduct as Violations of 'Plaintiff's Civil and Other Federal Rights,'" SCC at 22–26, five counts of "Conspiracy to Execute One or More Forms of "Material Breach of a Contractual Agreement,'" SCC 26–29, ten counts of "Conspiracy to Execute One or More Forms of 'Wrongful Interference with a Contractual Agreement,'" SCC at 29–35, four counts of "Conspiracy to Execute One or More Forms of 'Invidious Discrimination' or 'Blacklisting,'" SCC at 35–40, six counts of "Unlawful Employment Discrimination Pursuant to Federal Law," SCC at 40–53, five counts of negligence, SCC at 43–44, five counts of "Failure to Intervene," SCC at 45–46, one count of "Negligent Hiring, Supervision and Training," SCC at 46, one count of intentional inflection of emotional distress, SCC at 46, and one count of "Damages and Special Damages." SCC at 47. As with the FCC, these claims are mostly unconnected to any facts. And many reiterate clearly flawed claims the Court specifically identified as conclusory, contradictory, or vague. *Compare, e.g.*, Doc. 40 at 5 (claims for Privacy Act violations by a government agency fail to state a claim), *with* SCC at 4–5, 22, 25 (realleging Privacy Act violations without connection to facts).

**B. The SCC violates the Federal Rules because it is needlessly long, conclusory, vague, and fails to raise Plaintiff's right to relief above a speculative level.**

The Court will also dismiss because the SCC suffers from the same shortcomings as its predecessor. First, 48 pages is long on its face, particularly given the small font size and spacing, and because there are fewer facts alleged than in the original, 9-page

*Oppenheimer* complaint.

Second, the SCC is just as conclusory as the FCC. For example, the Court previously observed:

> the allegation about Plaintiff losing his driver's license appears after the allegation that Oppenheimer and his wife "subsequently executed defamatory, slanderous, perjurious and libelous statements as *'Defamation Per Se*[.]'" [FCC] at 13. Before that, Plaintiff alleges Oppenheimer "extended a verbal contract offer of employment" to Plaintiff. *Id.* As the Court previously explained, characterizing facts with legal language "is a conclusion of law reserved for the Court." [*Oppenheimer*], Doc. 14 at 9.

Doc. 40 at 4. The SCC repeats these conclusions nearly verbatim. *See, e.g.*, SCC at 8 ("Oppenheimer … subsequently deliberately and maliciously tortiously interfered with [Plantiff's] contractual agreements, by executing "*Defamation Per Se*," in falsely asserting Plaintiff lost his Driver's License for a DUI and physically assaulted fellow employees at his prior place of employment.").

Third, the SCC is vague about critical details. For example, Plaintiff frequently refers to himself as a "current and/or former Federal Employee," SCC at 7, to "one or more" Defendants, SCC at 25, and conflates various charges and capacities. *See, e.g.*, *id.* at 4 (Defendants violated the "First Amendment Rights to Free Speech and to Petition his Government and/or The Privacy Act"), 8 (Defendants blacklisted Plaintiff from working "in the federal government and/or in the mining industry"), 9 (Defendants acted "in their own individual personal capacities and interests, and/or when concurrently acting as agents of … M3"). Plaintiff's efforts to cast as broad a net as possible further confuse the issues and deprive Defendants of adequate notice.

Finally, and again, *see* Doc. 40 at 5, the few facts Plaintiff alleges fail to raise his right to relief above a speculative level. The SCC's heart is a conspiracy theory. Plaintiff alleges Defendants and their predecessors at various government agencies and police departments conspired to discriminate against him and to blacklist him from the mining industry and federal employment. *Twombly* is particularly relevant in the conspiracy context. There, plaintiffs alleged an antitrust conspiracy between major

telecommunications providers based on certain parallel conduct between them. *See Twombly*, 550 U.S. at 548–49. The Court held that parallel conduct, even conscious parallelism, establishes only the possibility of conspiracy. *See id.* at 553–54. The Court reasoned that:

> [t]he inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.

*Id.* at 554. At the pleading stage, "[t]he need … for allegations plausibly suggesting (not merely consistent with) [conspiracy] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief." *Id.* at 557. So, too, here. The alleged behavior of Defendants and their predecessors is consistent with conspiracy. But that behavior is also consistent with other possibilities. Plaintiff fails to allege facts making one possibility more plausible than another.

Even if some aspect of the SCC did state a claim, that claim is so obscured by the SCC's other failings that the Court is not obliged to rescue Plaintiff's entire case. That is particularly true when Plaintiff has had three opportunities to state his claim and has ignored the Court's guidance in doing so. *Cf. McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) ("The propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit.") (citing *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74 (9th Cir. 1981) (affirming Rule 8 dismissal where Court considered less drastic alternatives such as amendment); *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, 442 F.2d 1047, 1052 (9th Cir. 1971) ("[T]he harshness of a dismissal [under Rule 41(b)] with prejudice is directly proportionate to the likelihood that plaintiff would prevail if permitted to go forward to trial."). For these reasons, the Court will grant Defendant's motion to dismiss under Rules 8, 12(b)(6), and 41(b) of the Federal Rules of Civil Procedure, and, to the extent the SCC alleges fraud, Rule 9.

**C. The Court will dismiss with prejudice because amendment would be futile.**

Plaintiff claims entitlement to "at least 2 more attempts at correcting any specific

deficiency," and asserts he "cannot be reasonably be expected to correct any deficiency which has not been specifically identified" by Defendants. *See* Doc. 47 at 14. Defendants disagree. Doc. 50 at 5–6 (citing *Gottschalk v. City & County of San Francisco*, 964 F. Supp. 2d 1147 (N.D. Cal. 2013)). In *Gottschalk*, the court dismissed with prejudice pro se plaintiff's second amended complaint under Rules 8 and 12(b)(6), concluding that "allowing Plaintiff another opportunity to amend her complaint is unlikely to result in an intelligible complaint that meets the requirements of Rule 8(a), gives Defendants fair notice of the claims against them, and states one or more viable claims for relief." 964 F. Supp. 2d at 1159–60. The Court previously distinguished *Gottschalk* because it concerned dismissal of a second amended complaint, not a first. Doc. 40 at 5–6. That distinction is no longer available, and the Court finds *Gottschalk* similar and persuasive.

Notwithstanding the liberal construal of pro se pleadings, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1986); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986) (pro se litigants should not be treated more favorably than parties represented by attorneys); *United States v. Flewitt*, 874 F.2d 669, 675 (9th Cir. 1989) (pro se litigants are subject to the same good faith limitations imposed on lawyers). The Court gave Plaintiff several chances to amend his complaint. The Court gave detailed feedback. The Court pointed Plaintiff to resources to help him. And the Court warned Plaintiff in no uncertain terms that failure to incorporate the Court's feedback would bring dismissal with prejudice.

Plaintiff has had ample opportunity to state a claim. He has tried three times. He is unable. Based on the discussion above, the Court finds it "absolutely clear" that further amendment would be futile. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). Thus, the Court will exercise its discretion to dismiss with prejudice.

**D. Motion to Strike**

In his response, Plaintiff asserts that "Defendants motion for dismissal should be stricken from the record as it was submitted under fraudulent pretexts and otherwise failed to overcome the Plaintiffs opposition arguments." Doc. 47 at 18. The Court construes this

as a motion to strike under Local Rule 7.2(m)(2). *See* Doc. 40 at 7 (same). So construed, the Court will deny Plaintiff's motion because he has not overcome Defendants' arguments and fails to identify any fraudulent pretext for their motion to dismiss.

## IV. Order

For these reasons,

**IT IS ORDERED GRANTING IN PART** Plaintiff's motion for judicial notice (Doc. 46), consistent with this Order's reasoning and citations.

**IT IS FURTHER ORDERED DENYING** Plaintiff's motion to strike (Doc. 47).

**IT IS ORDERED GRANTING WITH PREJUDICE** Defendant's Motion to Dismiss (Doc. 43). The Clerk of the Court shall enter judgment accordingly, and close this case and related case 4:22-CV-00290-JCH.

Dated this 27th day of September, 2023.

_____
John C. Hinderaker
United States District Judge